**In the United States District Court
for the District of Kansas**

———————

Case No. 23-cr-40019-TC-1

———————

UNITED STATES OF AMERICA,

*Plaintiff*

v.

TYLER COLBERT,

*Defendant*

———————

**MEMORANDUM AND ORDER**

An indictment alleges Tyler Colbert engaged in multiple counts of producing and receiving child pornography and related crimes. Doc. 1 (alleging violations of 18 U.S.C. §§ 1470, 2251(a), 2252(a)(2), 2252(a)(4)(B), and 2422(b)). Colbert moves to suppress the contents of his Snapchat account that the Government obtained as a result of two preservation requests made pursuant to the Stored Communications Act, 18 U.S.C. § 2703(f). Doc. 22. For the following reasons, his motion is denied.

**I**

**A**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The basic purpose of this Amendment, as recognized in countless decisions of the Supreme Court, is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *United States v. Mathews*, 928 F.3d 968, 975 (10th Cir. 2019) (citing *Camara v. Mun. Ct. of S.F.*, 387 U.S. 523, 528 (1967) (internal quotations and citations omitted)).

Searches and seizures are presumed unreasonable when conducted without a warrant. *United States v. Karo*, 468 U.S. 705, 717 (1984). Yet a defendant bears the initial burden of showing that a search or seizure implicates the Fourth Amendment. *United States v. Shrum*, 908 F.3d 1219, 1229 (10th Cir. 2018). If this burden is met, then the Government bears the burden of proving the warrantless search or seizure was reasonable. *Id.* If the Government establishes an exception to the warrant requirement, the search is reasonable and therefore constitutional. *United States v. Neugin*, 958 F.3d 924, 930 (10th Cir. 2020).

The exclusionary rule generally forbids the Government from using evidence obtained from an illegal search. *Herring v. United States*, 555 U.S. 135, 139 (2009). But the rule applies only where it "result[s] in appreciable deterrence" for law enforcement. *Id.* at 141 (citing *United States v. Leon*, 468 U.S. 897, 909 (1984)). Suppression of evidence is therefore not "an automatic consequence of a Fourth Amendment violation." *Id.* at 137.

**B**

The Government alleges that Tyler Colbert, a member of the United States military, used his cell phone and a popular social media application, Snapchat, to engage in sexual activity with several minor victims.[1] Although Colbert was stationed in Kansas, the Government alleges that some of these victims were in high school on the Missouri side of the Kansas City metropolitan area.

The Government, as a result of its investigation, obtained a search warrant for the contents of Colbert's Snapchat account. Colbert's motion to suppress does not challenge the warrant itself. Instead, he alleges that suppression is necessary because the Government improperly preserved information in his Snapchat account pursuant to Section

---

[1] The underlying facts are drawn from the parties' briefs, as well as testimony and exhibits provided at the April 10 suppression hearing. All citations are to the document number and pagination in the CM/ECF system.

2703(f) of the Stored Communications Act.² A brief summary of the Stored Communications Act and the relevant features of Snapchat precedes the relevant factual and procedural history.

**1.** This case concerns application of the Stored Communications Act, 18 U.S.C. § 2701, *et seq.* Generally speaking, the Act regulates the Government's access to content held by, among others, internet service providers. At issue here is Section 2703, which provides the Government with the ability to compel preservation of specified records. It states, in pertinent part, that the "provider of wire or electronic communication services or a remote computing service, upon the request of a governmental entity, shall take all necessary steps to preserve records and other evidence in its possession pending the issuance of a court order or other process." 18 U.S.C. § 2703(f)(1); *see also Hicks v. Sprint Nextel Corp.*, 661 F. App'x 938, 940 (10th Cir. 2016). Any records preserved "shall be retained for a period of 90 days, which shall be extended for an additional 90-day period upon a renewed request by the governmental entity." 18 U.S.C. § 2703(f)(2). A service provider's compliance with a preservation request is compulsory. *United States v. Microsoft Corp.*, 138 S. Ct. 1186, 1187–88 (2018) (holding a controversy moot because Congress had amended the Act to make it unambiguously clear that a provider must comply with a request, regardless of where the information was located); *see also United States v. Ackerman*, 831 F.3d 1292, 1297 (10th Cir. 2016).³

---

² Colbert's counsel stated the motion is based on a model motion to suppress evidence obtained as a result of Section 2703(f) preservation requests. *See* Orin S. Kerr, *Updated Model Motion to Suppress for Unlawful Internet Preservation*, The Volokh Conspiracy (March 1, 2023), https://reason.com/volokh/2023/03/01/updated-model-motion-to-suppress-for-unlawful-internet-preservation/. Both Colbert and the Government acknowledged that no circuit court, including the Tenth Circuit, has ruled on the issue presented. Doc. 23 (attaching two trial court rulings from the Central District of California and the D.C. Superior Court); *see also* Orin S. Kerr, *The Fourth Amendment Limits of Internet Content Preservation*, 65 St. Louis U. L.J. 753, 757-59 (2021) (noting two Ninth Circuit decisions resolved the issue without addressing the merits).

³ The Government concedes that circuit precedent establishes that Snap, Inc., when complying with the preservation requests, was acting as a governmental agent. Doc. 23 at 9 (citing *United States v. Ackerman*, 831 F.3d 1292, 1302 (2000)).

The function of a preservation request is to make a complete copy of the account as it exists when the provider satisfies the request. Doc. 23 at 7; *cf. United States v. Perez*, 798 F. App'x 124, 126 (9th Cir. 2020) (explaining that a preservation request involves "simply creating a contemporaneous, new copy of the … account"). Preservation is not prospective and does not continuously monitor and store communications made while the request is being honored. *Id.* It simply archives all data existing on the service's servers at the time the preservation request was executed.

Importantly, a preservation request provides nothing to the Government. To receive the underlying information retained by a preservation request, the Government must obtain a search warrant, court order, or administrative subpoena. *See* 18 U.S.C. § 2703(a)–(c).

**2.** Colbert and the minor victims used Snapchat, a social media mobile application, to communicate. The content of these communications is at issue in Colbert's motion to suppress. Two aspects of Snapchat help contextualize the issue raised by Colbert: the nature of the Snapchat application and the terms of use to which Colbert and all other accountholders must agree.

**a.** Snapchat allows users to share photos, videos, and texts. *Mahanoy Area Sch. Dist. v. B. L. by & through Levy*, 594 U.S. 180, 184 (2021); Doc. 22 at 2–3; Doc. 23 at 3–4. A "snap" is a photo or video taken through the app. Doc. 23 at 4; *see also Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1088 (9th Cir. 2021). Snaps are not available outside of the Snapchat application, meaning that a photo or video taken through the Snapchat application would not appear in the user's camera roll or be found when searching the device. Nathan C. Ranns, *Gone in A Snap?: The Effect of 17 U.S.C. S 102(a) Fixation Precedents on Ephemeral Messaging Platforms*, 45 AIPLA Q.J. 255, 268 (2017). Users connect with each other via "Stories" and "Chats," and can save material via "Memories." Doc. 23 at 4–5. Different retention rules apply to "Stories," "Chats," and "Memories" depending on user settings and behavior. Doc. 23 at 4; *see also Doe v. Purdue Univ.*, No. 2:17-CV-33, 2021 WL 2767405, at *5 (N.D. Ind. July 2, 2021).

One of Snapchat's most notable features is that content is automatically deleted, sometimes as soon as it is sent. *L.W. through Doe v. Snap, Inc.*, 675 F. Supp. 3d 1087, 1092–93 (S.D. Cal. 2023); Doc. 22 at 3; Doc. 23 at 4. For example, unless the sender of a snap chooses to save it, the snap is automatically deleted from the sender's application

once sent. *See United States v. Seme*, No. 20-CR-10245, 2021 WL 5111865, at *1 (D. Mass. Nov. 3, 2021). Likewise, unless a recipient opts to save a snap, it is automatically deleted from the recipient's application once opened. *United States v. Confer*, No. 20-13890, 2022 WL 951101, at *1 (11th Cir. Mar. 30, 2022).

**b.** Snapchat users must agree to Snap, Inc.'s Terms of Service, including the incorporated Community Guidelines. *United States v. Tennant*, No. 5:23-CR-79, 2023 WL 6978405, at *1 (N.D.N.Y. Oct. 10, 2023); Doc. 23 at 15; Doc. 23-1 at 7, 23-2. Specifically, the Terms authorize Snap, Inc. to "access, review, screen, and delete [a user's] content at any time and for any reason, including to provide and develop the Services or if [Snap, Inc.] think[s] [a user's] content violates these Terms." *See Tennant,* 2023 WL 6978405, at *1; Doc. 23-1 at 4. And if a user "fail[s] to comply" with the Terms, Snap, Inc. "reserve[s] the right to remove any offending content, terminate or limit the visibility of [the user's] account, and notify third parties—including law enforcement—and provide those third parties with information relating to [the] account." Doc. 23-1 at 7.

Moreover, the Community Guidelines explicitly "prohibit accounts that promote or distribute pornographic content" and warn that "[Snap, Inc.] report[s] child sexual exploitation to authorities." Doc. 23-2 at 1. The Guidelines directly state, "Never post, save, or send nude or sexually explicit content involving anyone under the age of 18—even of yourself. Never ask a minor to send explicit imagery or chats." *Id.*

**3.** The FBI started investigating Colbert in April 2022. The Missouri mother of minor victim 1 (MV-1) reported that her child sent sexually explicit images to a Snapchat user "mason.opt," met mason.opt in person, and engaged in sexual activity with him. Doc. 23 at 1. Based on this report, FBI Special Agent Ashley Davis served Snap, Inc. with two preservation requests pursuant to Section 2703(f) on or

about April 19, 2022.[4] One request was for MV-1's account and the other was for the mason.opt account. Doc. 22 at 2; Doc. 23 at 2; Doc. 25-2, Ex. 1.

At some point in June 2022, the investigation into Colbert was transferred to federal officials in Kansas. This transfer was necessary because of professional connections between MV-1's mother and the federal court system in the Western District of Missouri. Doc. 23 at 2. FBI Special Agent Brandon LaMar took over the investigation. As LaMar was preparing his application for a search warrant for the two accounts identified in the April 2022 preservation request, he noticed that the 90-day preservation period would soon expire. As a result, he issued a second preservation request, titled "Preservation Request Re-up" on July 14. *See* Doc. 22 at 2. LaMar testified that the "re-up" was both necessary and authorized by Section 2703(f), which states that preservation requests expire after 90 days but can be renewed once. *See* 18 U.S.C. § 2703(f). A re-up, LaMar testified, is essentially a new preservation request, capturing information preserved by the first request (because it had not yet expired) and information and content stored on Snap, Inc.'s servers that had been created between the first and second requests.

On July 19, 2022, LaMar sought and obtained a search warrant for the mason.opt Snapchat account. Doc. 22 at 2.[5] After receiving this warrant, Snap, Inc. provided the records contained in both the original and re-upped preservation request. The responsive materials revealed conversations between Colbert and multiple minor females, including MV-1. Doc. 23 at 2–3.

After the search was completed, LaMar interviewed Colbert. Colbert provided his phone and consented to a search of its contents.

---

[4] Davis also served Snap, Inc. with an administrative subpoena seeking identifying information about the mason.opt account. *See* Doc. 25-2, Ex. 2 (citing 18 U.S.C. § 2701 *et seq*.). Snap, Inc. responded to the administrative subpoena with identifying information for the mason.opt account, including an IP address and email address. *See id.* Ultimately, Davis was able to identify Colbert as the user of the mason.opt account. Colbert does not challenge the administrative subpoena.

[5] LaMar also obtained a warrant to search MV-1's Snapchat account. Colbert does not challenge that warrant.

Doc. 23 at 3. A review of the Snapchat application on Colbert's phone revealed conversations between Colbert and minor females. *Id.* The phone showed that some records appeared to have been deleted. *Id.* Colbert does not seek to suppress any records that were obtained pursuant to the consensual search of his phone.

Based on material obtained in the aforementioned investigation, a grand jury indicted Colbert. Doc. 23 at 3. Federal officials arrested him in Poland, where he was serving in the United States military. *Id.* After this arrest, a second search warrant was obtained and executed for Colbert's phone, revealing additional Snapchat communications with minor females. *Id.* Colbert is charged with two counts of sexual exploitation of a minor for production of child pornography in violation of 18 U.S.C. § 2251(a); three counts of sexual exploitation of a minor for receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2)(A) and (B); one count of coercion and enticement of a minor in violation of 18 U.S.C. § 2422(b); one count of transfer of obscene material to a minor in violation of 18 U.S.C. § 1470; and one count of sexual exploitation of a minor for possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Doc. 1.

Colbert moves to suppress certain information from his Snapchat account. He does not challenge the warrant authorizing the search of his account or the manner in which it was executed. Instead, he contends that the Government's preservation request violated the Fourth Amendment in two ways: it was an unreasonable seizure of his account content, which was held too long before a warrant was obtained, and the preservation order itself constituted an unreasonable search. All contents of his Snapchat account that were obtained by the subsequent execution of the search warrant should be suppressed, he argues, because the materials within his account would have been unavailable (due to Snapchat's rolling deletion of user information) but for the Government's two preservation requests. Doc. 22.

## II

Colbert has not established that the preservation requests constituted either an unreasonable seizure or an unreasonable search. Even if he had done so, suppression would not be warranted because the FBI acted in good faith reliance on the Stored Communications Act. As a result, Colbert's suppression motion is denied.

7

**A**

Accepting for purposes of argument that Snap, Inc.'s compliance with the preservation request was a warrantless seizure,[6] it did not offend the Fourth Amendment because it was not unreasonable. The FBI acted diligently from the time of the first preservation request to the execution of the search warrant.

The Fourth Amendment forbids unreasonable searches and seizures. U.S. Const. amend. IV. Warrantless seizures are presumptively unreasonable, so the Government bears the burden to prove otherwise. *United States v. Shrum*, 908 F.3d 1219, 1229 (10th Cir. 2018). The reasonableness inquiry requires a court to view "the facts and circumstances of each case …in the light of established Fourth Amendment principles." *Id.* at 1230 (citing *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)); *United States v. Christie*, 717 F.3d 1156, 1162 (10th Cir. 2013) (noting that the "totality of the circumstances" approach applies when "assessing the reasonableness of a delay in seeking a warrant"). Specifically, "[a court's] task in each case is to 'balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify

---

[6] A Fourth Amendment seizure "occurs when there is some meaningful interference with an individual's possessory interest in his property." *United States v. Hill*, 805 F.3d 935, 937 (10th Cir. 2015) (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). When determining whether interference is "meaningful," "courts must be mindful of the nature of the possessory interest implicated." *Id.* at 938. Colbert argues a seizure occurred because the preservation request interfered with his right to destroy the contents of his Snapchat account between the time in which the initial preservation order was issued and when the search warrant was issued. Doc. 22 at 15. There is no Tenth Circuit precedent on this question and courts across the country have come to differing conclusions. *United States v. Rosenow*, 50 F.4th 715, 736 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 786 (2023) (declining to decide whether preservation requests were unconstitutional seizures because suppression was not warranted under the but-for cause requirement.); *United States v. Zwiefelhofer*, No. 2:19-CR-150, 2023 WL 4931899, at *2 (M.D. Fla. Aug. 2, 2023) (same); *United States v. King*, No. 220CR00344, 2023 WL 7906420, at *5 (D. Nev. Nov. 16, 2023) (holding preservation requests are not seizures because they are not state action); *United States v. Basey*, No. 4:14-CR-00028, 2021 WL 1396274, at *5 (D. Alaska Apr. 13, 2021) (same). Resolution of that issue is not necessary in this case because, even assuming the preservation request was a seizure, the Government has established that it was a reasonable one.

the intrusion.'" *Christie*, 717 F.3d at 1162 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)) (applying the balancing test to hold that taking more than five months to obtain a search warrant after the warrantless seizure was not unreasonable).

When assessing a claim that a warrantless seizure was unreasonable due to delays in obtaining a warrant to search the seized material, courts evaluate a variety of factors. These include the time between the seizure and warrant, the degree and significance of the interference with the defendant's property, the Government's legitimate interest in holding the property, and whether the Government diligently pursued the warrant. *United States v. Smith*, 967 F.3d 198, 206 (2d Cir. 2020); *United States v. Laist*, 702 F.3d 608, 613–14 (11th Cir. 2012) (collecting cases); *see also Shrum*, 908 F.3d at 1231; *Place*, 462 U.S. at 701.

Colbert's principal argument is that the government agents waited too long to obtain a warrant. They took 96 days between the seizure and warrant, which Colbert contends is simply too long to be constitutionally reasonable. *See* Doc. 22 at 19. That proposition, at least in the abstract, seems unlikely. But in context, the Government has established that the duration of time between the preservation request and the warrant was not unreasonable.

Start with the issue of whether 96 days between issuing the preservation request and obtaining the warrant is unreasonable. Without knowing anything else that occurred, it seems unlikely such a delay would be unreasonable. After all, the Stored Communications Act authorizes a preservation order to be in place for up to 180 days. *See* 18 U.S.C. § 2703(f). In other words, the agents in this case did nothing more than comply with the procedures contained in a duly enacted federal law, something that has traditionally been recognized as reasonable. *Cf. Illinois v. Krull*, 480 U.S. 340, 351 (1987) ("Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law."); *see also Florida v. Riley*, 488 U.S. 445, 451 (1989) (White, J.) (plurality opinion) (concluding search was not unreasonable because helicopter overflight did not violate any federal law). Colbert has presented no authority suggesting that a delay falling well within the statutorily prescribed period has ever been found constitutionally unreasonable. Indeed, the Tenth Circuit has explicitly rejected the argument that any length of time is per se dilatory because "the reasonableness of a delay in seeking a warrant" depends on the "totality of the circumstances in each case." *United States v. Christie*, 717 F.3d 1156, 1162 (10th Cir. 2013) (internal

quotation marks omitted) (explaining that a court must be "wary of the temptation to impose rigid rules, bright-line tests, and mechanistic inquiries").

The context in which this delay occurs confirms the 96-day delay was reasonable. The investigation was not idle; the Government had to overcome several unique circumstances which increased the time needed between the initial preservation request and the search warrant. For one, it was difficult to identify Colbert as the owner of the mason.opt Snapchat account. While Davis acted promptly to issue the preservation request and administrative subpoena, Snap, Inc. took twenty days to provide the administrative information about the mason.opt account owner. And upon receipt, that information did not readily identify Colbert. Davis testified that it pointed to IP addresses at the home of one of Colbert's relatives, who did not match the reported characteristics of the perpetrator MV-1 had identified, and then to Fort Riley, a large military complex.

That alone may be sufficient to justify the delay, but there was more. MV-1 was unavailable to provide additional details of the encounters because she was undergoing mental health treatment. In addition, the Government transferred responsibility for investigation and prosecution from the Western District of Missouri to the District of Kansas in late May due to the professional relationship of that office with MV-1's mother. Doc. 23 at 2. Once LaMar received the investigation and MV-1's phone in early June, the testimony suggests that he acted diligently. Among other things, he reviewed the investigation file and analyzed the contents of MV-1's phone. *Id.* He also developed new information from MV-1, who had become capable of participating in an interview. *Id.* And he re-upped the preservation request in the midst of drafting the search warrant because the original request was set to expire before the warrant could be executed.

Another factor in the Government's favor is the minimal degree and significance of the preservation request's interference with Colbert's property interests. The preservation request did not dispossess Colbert of the use of his Snapchat account. At all times, he could use his Snapchat account without any interference or delay. In fact, he was unaware that a preservation order had been executed on his account. That makes the nature of this seizure materially different from seizures in the cases Colbert relies on from other jurisdictions. Generally speaking, none of the authorities he cites arise in the Stored Communications Act preservation context and each of them involved the complete

dispossession of a physical item seized with minimal justification for the delay. *See Smith*, 967 F.3d at 211 (concluding that dispossessing defendant of a tablet while waiting 31 days to obtain a search warrant was unreasonable where there was no justification for the delay); *United States v. Mitchell*, 565 F.3d 1347, 1352–53 (11th Cir. 2009) (concluding that complete dispossession of a hard drive for three weeks was unreasonable when the delay was solely attributable to the fact that an agent went on vacation and chose not to reassign investigatory tasks). In contrast, requiring Snap, Inc. to preserve the contents of Colbert's account was a minimal intrusion because it did not meaningfully affect Colbert's use or enjoyment of Snapchat or his devices. *Cf. United States v. Rosenow,* 2018 WL 6064949, at *10 (S.D. Cal. Nov. 20, 2018) (holding that a preservation request does not implicate the Fourth Amendment because it does not interfere with a person's ability to use the account or entitle the Government to any information).

Nor did the preservation order convey any information. In *Carpenter v. United States*, the Supreme Court recognized that some aspects of the Stored Communications Act are capable of conveying "deeply revealing" information without a warrant and that this—Section 2703(d), in particular—violates an individual's reasonable expectation of privacy. 585 U.S. 296, 320 (addressing an order that compelled cell phone companies to provide cell phone location information to government agents). But that is not the case with the preservation order here; it conveyed nothing to the Government. Information was only conveyed pursuant to the subsequent warrant. Absent a warrant, the materials held pursuant to the preservation order would have been allowed to disappear at the end of the statutory period pursuant to Snap, Inc.'s ordinary retention polices.

Finally, the Government's interests are both weighty and familiar in contexts where there is a legitimate concern of evidence destruction. The parties agree that Snap, Inc.'s retention policies meant Colbert's Snapchat content was subject to destruction in a matter of hours or days absent a preservation request. *See* Doc. 22 at 18–20; Doc. 23 at 16–17. Thus, the FBI had—as Colbert appears to accept—a legitimate interest in preventing the automatic destruction of Colbert's Snapchat content. In other contexts, the threat that evidence will be destroyed has long been the basis for finding seizures prior to obtaining a warrant reasonable. *See*, *e.g.*, *Andersen v. DelCore*, 79 F.4th 1153, 1166–67, n.8 (10th Cir. 2023) (holding the warrantless seizure of a cell phone was reasonable "to prevent the deletion of incriminating evidence that the

officer had probable cause to believe existed on the phone" while the officer obtained a search warrant); *Illinois v. McArthur*, 531 U.S. 326, 332 (2001) (holding a warrantless seizure preventing a suspect from entering a trailer unaccompanied for two hours while officers obtained a warrant was reasonable because he might destroy drug evidence); *Place,* 462 U.S. at 701 (holding a warrantless seizure of luggage in an airport, on the basis of reasonable and articulable suspicion that an item may disappear, is reasonable); *United States v. Brown,* 701 F.3d 120 (4th Cir. 2012) (holding a warrantless seizure of a defendant's laptop was reasonable to prevent the destruction of evidence of child pornography).

All told, these factors confirm that the seizure—assuming there was one—was not unreasonable. As a result, the preservation order did not violate Colbert's Fourth Amendment rights. *See Shrum*, 908 F.3d at 1230–31 (explaining that a warrantless seizure to prevent the imminent destruction of evidence is typically reasonable when the government works to "diligently procure a search warrant").

**B**

Colbert's second theory is that the preservation order constituted a warrantless search. To be clear, he does not allege that the search occurring after the warrant was obtained was unlawful. Instead, he contends that the preservation order itself constituted an unlawful search because it amounted to a physical trespass and/or interfered with his reasonable expectation of privacy. That claim fails.

There are at least two ways to conceptualize Fourth Amendment search claims. *See generally Carpenter v. United States*, 585 U.S. 296, 304 (2018); *United States v. Mathews*, 928 F.3d 968, 975 (10th Cir. 2019). Colbert's first argument is tied to the approach where courts have begun (or, some may say, returned to) considering whether the government physically trespasses on a person's property. *See United States v. Hay*, 95 F.4th 1304, 1313 (10th Cir. 2024) . Under the common-law trespass theory, the Fourth Amendment proscribes intrusion "on a constitutionally protected area," which usually means a person's property. *United States v. Jones*, 565 U.S. 400, 407 (2012). In *Jones*, for example, a search occurred because government agents committed a trespass by physically occupying private property when they placed a tracking device onto a vehicle. *Id.* at 404, 410. And in *Florida v. Jardines*, the inquiry was focused on whether officers had an implied license to have drug dogs sniff a front porch. 569 U.S. 1, 7–10 (2013). The officers had no

12

such license, so they trespassed by exceeding the scope of their invitation. *Id.*

The other approach that has been employed for several decades considers whether a governmental intrusion invades a person's reasonable expectation of privacy. *United States v. Ackerman*, 831 F.3d 1292, 1307–08 (10th Cir. 2016) (citing *United States v. Jacobsen*, 466 U.S. 109 (1984) and *Katz v. United States*, 389 U.S. 347 (1967)). The privacy approach does not rely on property rights but looks instead to whether an individual had a subjective expectation of privacy that society considers objectively reasonable. *Carpenter*, 585 U.S. at 304–05; *United States v. Ruiz*, 664 F.3d 833, 838 (10th Cir. 2012). While the Court has "held that 'a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties,'" *Carpenter*, 585 U.S. at 308 (quoting *Smith v. Maryland*, 442 U.S. 735, 743–44 (1979)), sharing data with others does not automatically abrogate all Fourth Amendment protections, *id.* at 314.

**1.** The preservation request was not a warrantless, trespassory search under *United States v. Jones*, 565 U.S. 400 (2012), because preservation conveyed no information to the Government. *Contra* Doc. 22 at 13–15. The law distinguishes trespassory acts intended to convey information from seizures that merely facilitate later, lawful attempts to access information. *See United States v. Ackerman*, 831 F.3d 1292, 1307–08 (10th Cir. 2016) (recognizing that *Jones* explained government conduct can constitute a search "when it involves a physical intrusion (a trespass) on a constitutionally protected space . . . *for the purpose of obtaining information*" (emphasis added)); *see also United States v. Johnson*, 43 F.4th 1100, 1111–12 (10th Cir. 2022) (holding that a "probing tactile examination" of a seized bag amounted to a warrantless search because officers obtained otherwise private information while handling the bag).

As Colbert concedes, the preservation request was "for the purpose of preserving [content] for government investigation later." Doc. 22 at 15. And testimony confirms that the Government did not obtain—or even seek to obtain—any information until after the search warrant authorized its agents to do so. *Jones* does not forbid this interference with possessory interests. 565 U.S. at 408, n.5 ("Trespass alone does not qualify, but there must be conjoined with that [trespass] … an attempt to find something or to obtain information.").

Colbert's trespass argument is really about the viability of governmental authority to secure something to prevent its destruction while awaiting authority to search it. Doc. 24 at 4. But, as noted, that is a long-standing and permissible right of government agents that has been repeatedly upheld against constitutional challenges. *See* Part II.A., *supra*.

Colbert's consent also undermines his trespass theory. When he opened his Snapchat account, he gave express consent that Snap, Inc. could access his files at any time: "[W]e may access, review, screen, and delete your content at any time and for any reason, including to provide and develop the Services or if we think your content violates these terms." *See* Doc. 23-1 at 4. Snap, Inc. further described impermissible uses of its application, including the creation or distribution of child sexual exploitation or other pornographic content. *Id.* at 7 (incorporating the "Community Guidelines"). It made clear that Snap, Inc. had the express authority to notify and share with law enforcement the contents of any accounts that offended these Guidelines. *Id.* Consent is an absolute defense to common-law trespass claims, so it also defeats invocation of the trespassory search doctrine. *See Jones*, 565 U.S. at 408–10 (explaining that consent distinguished two other cases about the Government's use of tracking devices, *United States v. Karo*, 468 U.S. 705 (1984), and *United States v. Knotts*, 460 U.S. 276 (1983)); *see also United States v. Sporn,* No. 21-10016, 2022 WL 656165, at *11 (D. Kan. Mar. 4, 2022) (holding there was no trespassory search when the defendant authorized Twitter to read and disclose account content by agreeing to its specific terms of service).

**2.** Nor did the preservation order violate the reasonable expectation of privacy test. *Contra* Doc. 22 at 15–18. An individual has a legitimate expectation of privacy in that which he seeks to preserve as private and where his expectation of privacy is one that society considers objectively reasonable.[7] *United States v. Mathews*, 928 F.3d 968, 975 (10th Cir. 2019). Whether an expectation of privacy is objectively reasonable "is a value judgment." *United States v. Johnson*, 584 F.3d 995, 999 (10th

---

[7] Colbert does little to establish his subjective expectation of privacy. Doc. 22 at 16. Even if he had such an expectation, it would not change the ultimate outcome. *See United States v. Johnson*, 584 F.3d 995, 999 (10th Cir. 2009) (assuming a subjective expectation of privacy and only analyzing the objectively reasonable prong); *cf.* Orin S. Kerr, *Katz Has Only One Step: The Irrelevance of Subjective Expectations*, 82 Chicago L. Rev. 113 (2015).

Cir. 2009). Ultimately, the question is whether broadly permitting the surveillance practice at issue would diminish citizens' privacy and freedom to a point that would be "inconsistent with the aims of a free and open society." *Id.*

The objective reasonableness of a person's expectation of privacy in electronic communications shared over third-party networks can be defeated by the user's specific agreement with the third-party provider. *See United States v. Angevine*, 281 F.3d 1130 (10th Cir. 2002) (holding that an employer's computer policy established that it was not objectively reasonable to have an expectation of privacy in internet downloads on a work computer). Where those agreements explicitly inform users that their actions will be monitored and that evidence of a user's illegal activity on the platform may be turned over to law enforcement, courts have found there is no objectively reasonable expectation of privacy. *See United States v. Stratton*, 229 F. Supp. 3d 1230, 1241 (D. Kan. 2017) (holding that there was no reasonable expectation of privacy in PlayStation communications where the terms of service reserved the right to monitor "online activity on PSN," warned users not to violate the law, and indicated any such information may be turned over to law enforcement); *United States v. Sporn*, No. 21-10016, 2022 WL 656165, at *10 (D. Kan. Mar. 4, 2022) (holding that there was no objectively reasonable expectation of privacy in child sexual abuse material where Twitter's terms of service stated it may "access and read" communication and has a specific "zero tolerance" policy for child sexual exploitation). Where the terms are less specific about whether content is monitored or what content may be turned over to law enforcement, courts have been more willing to find an objectively reasonable expectation of privacy. *See United States v. Irving*, 347 F. Supp. 3d 615, 622–23 (D. Kan. 2018) (holding that there was an objectively reasonable expectation of privacy because Facebook's terms did not explicitly state that content would be monitored and reported to law enforcement and the defendant had not violated those terms); *see also United States v. Warshak*, 631 F.3d 266, 274 (6th Cir. 2010) (holding a user had an objectively reasonable expectation of privacy in emails because the ISP's terms of service indicated only that it "may access and use individual Subscriber information in the operation of the Service and as necessary to protect the Service").

Colbert lacked a reasonable expectation of privacy in his Snapchat account. He agreed to Snap, Inc.'s Terms, which made it clear that Snap, Inc. would have access to all the content Colbert shared. *See* Doc.

23-1 at 4. And the Terms clearly warn that the company may turn over "information relating to your account" to third parties, including "law enforcement." *See* Doc. 23-1 at 7. Snap, Inc.'s Terms also incorporate its Community Guidelines, which devote an entire section to explaining that "Sexually Explicit Content" is not permitted and warning that "[w]e report child sexual exploitation to authorities." Doc. 23-2 at 1. Snap, Inc. goes further: "[n]ever post, save, or send nude or sexually explicit *content* involving anyone under the age of 18." *Id.* (emphasis added). These terms are specific enough to make it clear to any user that Snap, Inc. will report sexually explicit content involving minors to the authorities, defeating the idea that its users could have an objectively reasonable expectation of privacy in such content posted on Snapchat. *Contra* Doc. 24 at 6.

## C

Even if the preservation requests violated the Fourth Amendment, suppression would not be warranted. Suppression is not "an automatic consequence of a Fourth Amendment violation." *Herring v. United States,* 555 U.S. 135, 141 (2009). A court need only suppress evidence when doing so "result[s] in appreciable deterrence" for law enforcement. *Davis v. United States*, 564 U.S. 229, 237 (2011). And when officers rely in good faith on a then-valid law, there is no deterrable conduct. *Illinois v. Krull*, 480 U.S. 340, 349–50 (1987); *United States v. Ackerman*, 804 F. App'x 900, 904 (10th Cir. 2020); *see also United States v. Esquivel-Rios*, 786 F.3d 1299, 1308 (10th Cir. 2015) (noting that conduct is only deterrable when the officer's conduct "was deliberate, reckless, or grossly negligent," or "the constitutional violation was the product of recurring or systemic negligence").

In this case, the agents reasonably relied on the authority and process conferred by Section 2703(f) of the Stored Communications Act in issuing preservation requests for Colbert's Snapchat account. The agents diligently followed the statutory timeline, which permits up to 180 days of retention if a request is properly renewed. Before obtaining possession of and then searching the preserved evidence, LaMar sought and obtained a warrant from a neutral and detached magistrate. In short, law enforcement officers followed the procedures and timeline laid out in a federal statute to secure evidence for this case. That conduct is not deterrable, nor do their actions suggest gross negligence. *Contra* Doc. 24 at 7. Suppression is not warranted.

## III

For the foregoing reasons, Colbert's motion to suppress, Doc. 22, is DENIED.

It is so ordered.


Date: May 9, 2024                      s/ Toby Crouse          
                                                           Toby Crouse
                                                           United States District Judge